WENTWORTH, Judge.
The employer/carrier, appellants in this workers’ compensation case, contend that the deputy commissioner erred in awarding (1) temporary total disability compensation for five months preceding May 24, 1984, and (2) partial wage loss benefits thereafter based on a finding that claimant “should be deemed to have an earning capacity of one-half of her pre-inju-ry earnings.” We affirm because the record adequately sustains the deputy’s conclusion that claimant’s disability during the time in question was causally related to her compensable injury, and we are not persuaded that the merger principles cited by appellant preclude wage loss benefits in the circumstances. We resolve a third issue raised by appellant, as to the award of “supportive psychiatric treatment” after maximum medical improvement,[1] by construing that language in accord with appel-lee’s conceded limitation to refer to palliative care.
*654 Claimant in this ease was a 56 year old woman, high school educated, who incurred orthopedic injuries (ultimately rated as a 5% permanent impairment) in a compensa-ble automobile accident on December 17, 1982, in her employment with the appellant credit union. She also suffered related psychiatric problems for which she was hospitalized in August 1983, and for which she remained on multiple prescription medications throughout the time here in question. The carrier suspended temporary total disability payments in December 1983 for the stated reason that claimant failed to keep one medical appointment.
A late December medical report stated, “It would probably help Norma to get back to work in some capacity.” Her psychiatrist’s August 1984 deposition acknowledges retrospectively that claimant was medically restricted from any work “dealing with the public in any kind of interpersonal way that would cause stress,” and “she certainly shouldn’t return to her old job.” These statements, and other portions of the record referenced by appellant, do not in our opinion negate or require reversal of the deputy’s conclusion that until May 24, 1984, claimant remained temporarily totally disabled from the psychiatric syndrome triggered by her accident, based on all pertinent circumstances including but not limited to claimant’s reasonable understanding of her restrictions and obligations. Cf. Redding v. Cobia Boat Co., 389 So.2d 1003 (Fla.1980).
The second issue above stated challenges the partial wage loss benefits which were awarded in proportion to the deputy’s finding that claimant is “able to perform some types of non-stressful employment,” and “should be deemed to have an earning capacity of one-half of her pre-injury earnings.” In denying 50% of claimant’s wage loss and granting proportionately diminished benefits based on what claimant is deemed able to earn, the deputy acknowledged “it is not possible to assess her work search because of the effect of the unrelated psychiatric problems,” in conjunction with her compensable psychiatric and orthopedic impairments. The deputy has accordingly complied with the provisions relied on in earlier decisions of this court holding that lack of work search is a voluntary limitation of income for which the statute provides a deemed earnings rule:
... In the event the employee voluntarily limits his income ... the salary ... the employee is able to earn ... shall be deemed to be the amount which would have been earned if the employee did not limit his income, (emphasis supplied) Section 440.15(3)(b)2, P.S.
Anderson v. S & S Diversified, 477 So.2d 591 (Fla. 1st DCA 1985); Publix Supermarkets, Inc. v. Franklin, 467 So.2d 1031 (Fla. 1st DCA 1985); City of Cocoa v. Adams, 419 So.2d 720 (Fla. 1st DCA 1982); Vida Appliances, Inc. v. Gates, 416 So.2d 1186 (Fla. 1st DCA 1982); Leffler v. Grand Union, 409 So.2d 1145 (Fla. 1st DCA 1982). Appellants’ contention that absence of work search per se precludes wage loss benefits in all circumstances results from misplaced reliance on the rule stated in Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982), which requires an employee to show a “good faith attempt to secure employment ... to establish, prima facie, an economic loss and to show that he ... has not voluntarily limited his ... income.” (e.s.) p. 876. That evidentiary guide is clearly meant to be applied consistently with the statute on deemed earnings, and the opinion itself states that a decision on “work search deficiency [in] a particular case does not convert that element into an essential evidentiary requirement” in every case. Pp. 877, 878.
Appellants’ further contention is that the award represents a “reverse merger” because claimant’s psychiatric disability is due in part to stress from unrelated criminal charges against family members during the period involved here. This argument does not support reversal because the record amply sustains the deputy’s conclusion that claimant’s compensable conditions materially contributed to her incapacity during all the months in question. We affirm because of the absence of any compelling evidence that, without the contribution of the non-industrial factors, claimant *655 would have been able to earn more than the amount fixed by the deputy as her deemed earnings.
Affirmed.
NIMMONS and ZEHMER, JJ., concur.

. In disposing of this appeal, in which neither party controverts the MMI finding, we assume but do not determine the propriety of the deputy’s order on this point:
Dr. Sprehe states that she would have reached maximum medical improvement in about a year after he started treating her [May 1983] in the absence of these unrelated problems. Based upon this testimony, I find that she reached maximum medical improvement on May 24, 1984. (emphasis supplied)
From the record we note Dr. Sprehe’s actual response to the question of when "would you have anticipated that she would have reached maximum medical improvmenet” if she had "not suffered the subsequent intervening aggravation of her condition due to her husband’s and son’s indictment and later conviction ...?”:
A. By this time. I would think so, except that her orthopedic problems have seemed to have been exacerbated this Summer, and so if they get exacerbated, that might have again exacerbated her depression.... I would think about a year after I started treating her, but that’s, you know, a lot of things could happen, but probably— Yeah, May 24. Yeah, we’re just, really, speculating, because you never can say when you’re going to be done treating someone, ‘cause they kind of have to start moving and then you see how fast they move, you know.