560 So.2d 364 (1990)
Michael EDWARDS and Cna Insurance Company, Appellants,
v.
Linda CAULFIELD and Division of Workers' Compensation, Appellees.
No. 88-2631.
District Court of Appeal of Florida, First District.
April 27, 1990.
*366 John M. Kelley of Adams, Kelley, Kronenberg & Kelley, Fort Lauderdale, for appellants.
Earle Lee Butler, P.A., Fort Lauderdale, for appellees.
NIMMONS, Judge.
The employer and his carrier appeal from a final order awarding claimant temporary partial disability benefits. Specifically, appellants challenge the judge's holdings that (1) claimant gave the requisite statutory notice of injury to the employer; (2) claimant was not an independent contractor for purposes of her average weekly wage determination; and (3) claimant was entitled to temporary partial disability benefits. We affirm the judge's finding that claimant *367 gave adequate notice of injury to her employer; reverse the judge's finding that claimant was not an independent contractor; and affirm the judge's award of wage-loss benefits, but remand for application of the "deemed earnings" provision of Section 440.15(4)(b), Florida Statutes (1987) with respect to such award.
On October 27, 1987, claimant began working as a part-time legal assistant at the Law Office of Michael Edwards. Claimant testified that on November 3, 1987, while working in the law office, she had an accident. According to claimant, she was rolling her chair back and forth while on the phone when the chair tipped over and she fell onto the hardwood floor. Claimant testified that there were two witnesses to this accident. Johnnie Bates, a legal secretary who worked in the same room as claimant, actually saw claimant fall. Mrs. Kitty Cooper, the employer's wife who also worked in the law office, came back to claimant's office after hearing a loud noise and asked what had happened. Claimant informed Mrs. Cooper of what had just occurred. She then told Ms. Bates and Mrs. Cooper that she thought she would be all right.
According to the testimony of Johnnie Bates and Kathy Spaulding, a receptionist in the office, both Bates and Spaulding were in the front of the law office when they heard a loud noise from the back room. Both employees immediately ran to the back room where they discovered the claimant sitting in a reclined position in a chair conversing on the telephone. The claimant was asked if she was okay. She told both employees she was fine and continued working.
Claimant first saw Dr. Ruddy, an orthopedic specialist, on January 28, 1988. He diagnosed claimant as suffering from a sprain and a strain to the lumbar spine. It was Dr. Ruddy's opinion that claimant's condition was causally related to the industrial accident of November 3, 1987. At this time, Dr. Ruddy permitted claimant to work on a part-time basis  about twenty to thirty hours per week, essentially light duties. Dr. Ruddy last saw claimant on April 18, 1988, at which time it was Dr. Ruddy's opinion that claimant was still having symptoms and in need of medical care and treatment, and thus had not yet reached MMI from the November 3, 1987 accident.
Claimant had worked for Michael Edwards from October 27, 1987 to approximately the first week in December, 1987. She worked part-time for Mr. Edwards  24 hours per week. While employed on a part-time basis with Mr. Edwards, claimant was employed as a full-time real estate agent with Hilton Johnson Realty (HJR) and was in the process of setting up her own real estate office. Claimant was paid by HJR within the 13-week period before the accident. Claimant received a check dated September 1, 1987 from HJR in the amount of $8,085. She was employed by HJR until approximately December 1987.
Following her employment with Mr. Edwards, claimant sought other part-time work in the legal field and tried to start up and conduct her own real estate business. Claimant worked part-time for Burdines in sales from November 28, 1987 through January 16, 1988. On December 4, 1987, she worked for Cohen & Cohen law firm, and from December 28, 1987 through January 5, 1988, she worked for attorney Allen Konigsburg. Both of these positions were obtained through claimant's association with Florida Legal Secretaries, Inc. (FLS), a legal secretarial placement service.
Claimant testified that in January and February 1988, she applied for work through FLS and a couple of attorneys, yet was unsuccessful in obtaining employment because no part-time positions were available. In March 1988, claimant submitted temporary partial wage loss forms for the period of January 4, 1988 through March 18, 1988. Claimant testified that when she started submitting her documentation in March and thereafter, she was primarily working for herself as a broker and looked for work through FLS. According to claimant, she worked out of an office in Fort Lauderdale. She did not have to pay rent since the building was owned by her fiance. Her fiance also supplied her with a *368 desk. She did not have a secretary or a phone. However, she had business cards and kept her own records. Her name was on the outside of the door: "Linda Caulfield, Licensed Real Estate Broker." She had a county license and a city license on the wall inside her office. While in her own business, claimant earned approximately $678 in referrals. Claimant also testified that she had pending several real estate deals, and was expecting a considerable amount of money upon the closing of these deals.
On May 3, 1988, claimant filed a claim for benefits[1], asserting that an accident occurred on November 3, 1987 injuring the claimant when she was employed by Michael Edwards. She sought temporary total disability benefits from the date of the injury to the hearing, and/or temporary partial benefits from the date the claimant was able to return to work[2], and payment of medical benefits for services provided by Dr. Ruddy.
The employer/carrier defended the claim on the basis that (1) there was no notice of injury; (2) no good faith job search was attempted by the claimant; (3) claimant voluntarily limited her income; and (4) there was no causal connection between the injury and the accident.
A hearing was held in July 1988. In his order dated September 16, 1988, the judge found that claimant (1) had sufficiently notified her employer of her injury; (2) had conducted a valid job search; (3) was entitled to TPD benefits; (4) and was not an independent contractor for HJR and thus was entitled to an increased average weekly wage (AWW).

I.
Appellants initially assert that the claimant did not give the employer timely notice of injury within the statutory period of thirty days as mandated by Section 440.185(1), Florida Statutes. Regarding notice of injury, the judge below made the following finding:
1. I find that the Claimant had a compensable accident on 11/3/87 and that she advised persons in the office of her injury who had the authority, or the apparent authority, to be a supervisor and to report the claim properly.
At the outset, we note that notice to a supervisor or foreman is adequate notice to the employer. In Winter Park Memorial Hospital v. Brown, 452 So.2d 116 (Fla. 1st DCA 1984), the claimant, a salad maker, failed to make out a formal accident report because she did not believe she had sustained any serious injury. Her employer did not receive official notice of her accident until approximately one year after the accident. The claimant testified that the employer's head salad maker, who witnessed claimant's accident, directed claimant's activity in the kitchen and that claimant regarded this individual as her supervisor. This court held that the head salad maker could be viewed as claimant's "ex officio" supervisor to whom notice of the accident was sufficient. Likewise, in Collier v. Ranch House Restaurants, Inc., 381 So.2d 270 (Fla. 1st DCA 1980), the claimant hurt her back one day while waiting tables. The next day she told the cashier about the incident. This court viewed the cashier as claimant's "ex officio" supervisor and held that notice to the cashier was adequate notice to the employer.
The judge's finding that claimant advised members of the office staff, who had apparent supervisory authority, of her injury is supported by competent substantial evidence. First, under the facts of this case, the judge was entitled to view Johnnie Bates as claimant's "ex officio" supervisor. At the time of the accident, the only persons working in the law office were: (1) Johnnie Bates, a paralegal secretary who had worked in the law office on a full-time basis for the past 2 1/2 years; (2) Kitty Cooper Edwards, the employer's wife, who assisted *369 in bookkeeping and answered the phone; (3) Kathy Spaulding, a part-time receptionist; (4) a law clerk; and (5) claimant, a part-time secretary. Out of the entire staff working in the law office at the time of the accident, Johnnie Bates was the only full-time employee and had worked in the office longer than anyone else. Moreover, claimant indicated in her deposition that she regarded Johnnie Bates as a supervisor.
Furthermore, as to whether the supervisor did in fact receive notice of claimant's injury, claimant testified that Ms. Bates had actually witnessed the accident. Certainly, the judge, as the trier of fact, was entitled to accept claimant's version of events over the version advanced by other witnesses.
Accordingly, we hold that the judge did not err in holding that the claimant gave sufficient and satisfactory notice of injury to the employer.

II.
Appellants next assert that the judge erred in holding that claimant was an employee of HJR and not an independent contractor. Section 440.02(11)(d)1. of the Workers' Compensation Law excludes "independent contractors" from the definition of "employee" and thereby excludes them from required coverage under the act. Accordingly, while wages from concurrent employment are generally included in the determination of a claimant's average weekly wage, see, e.g., Quality Painting, Inc. v. Harrison, 529 So.2d 1172 (Fla. 1st DCA 1988) and Section 440.14(1)(a), Florida Statutes (1987), earnings as an independent contractor are not includable in this determination. See Sunshine Ace Hardware v. Gray, 541 So.2d 1236 (Fla. 1st DCA 1989); Randell, Inc. v. Chism, 404 So.2d 175 (Fla. 1st DCA 1981).
In support of his conclusion that the claimant was not an independent contractor and that she was therefore entitled to an increased AWW based on her earnings as an employee with HJR, the judge found as follows:
7... . I am cognizant of the case law and the Employer/Carrier's exhibit indicating independent contractor, however, said agreement has a heading indicating "Employment Agreement." That Employment Agreement and the testimony of the Claimant gives rise to direct signs of control over the Claimant as to assigning floor time hours and other rules and regulations, giving rise to an additional $621 per week.
* * * * * *
13. I have reviewed Florida Statute 440.11(d)(1)(a) as pointed to by the Employer/Carrier and I find specifically that under the factual situation in this case that the Claimant was supervised by the words of the contract and that the remuneration was not solely by commission, but also by the items provided to her in her contract of employment.
We hold that the judge's conclusion that claimant was an employee of HJR and not an independent contractor is unsupported by the evidence in this case and is contrary to both statutory and case law.
Prior to 1977, the term "independent contractor" was not defined by the Workers' Compensation Law. Its definition had traditionally been structured by case law, which had applied the following tests, no one of which is decisive, to make the determination: (1) the extent of control which, by agreement, the employer may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation with reference to whether the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the worker supplies the instrumentalities, tools and the place of the work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relationship of master and *370 servant; and (10) whether the principal is or is not in business. See Cantor v. Cochran, 184 So.2d 173 (Fla. 1966); F.L. Enterprises, Inc. v. Unemployment Appeals Commission, 515 So.2d 1340 (Fla. 5th DCA 1987); Restatement (Second) of Agency § 220.
However, in 1977, the Legislature attempted to statutorily define the term "independent contractor." At that time, while cognizant of the tests which had been traditionally applied by the courts in determining independent contractor status[3], the Legislature amended Section 440.02(11)(d)1. (then Section 440.02(2)(d)(1.) to include within the term "independent contractor" real estate salesmen or agents who are paid solely by commission and work without supervision or control. Section 440.02(11)(d)1., which has remained unchanged, provides as follows:
(d) "Employee" does not include:
1. An independent contractor, including:
a. An individual who agrees in writing to perform services for a person or corporation without supervision or control as a real estate salesman or agent, if such service by such individual for such person or corporation is performed for remuneration solely by way of commission... .
Pursuant to the statute, then, real estate agents who are paid solely by commission are presumptively independent contractors unless they are under supervision or control.[4]
Control has always been the critical test for determining whether one is an employee or an independent contractor for workers' compensation purposes, the decisive question being who has the right to direct what shall be done, and when, where, and how it shall be done. Roberts v. Gator Freightways, Inc., 538 So.2d 55 (Fla. 1st DCA 1989), approved, 550 So.2d 1117 (Fla. 1989). In other words, an "independent contractor" is one who represents his employer as to the results of his work, but not as to the means by which the results are achieved. Baya's Bar & Grill v. Alcorn, 40 So.2d 468 (Fla. 1949); Collins v. Federated Mutual Implement and Hardware Insurance Company, 247 So.2d 461 (Fla. 4th DCA 1971).
The evidence in the present case establishes that HJR was concerned only with the final results of the claimant's work, namely, the procurement of sales. HJR exercised no control over the means by which these results were achieved.
The employment agreement between claimant and HJR is reproduced as follows:
EMPLOYMENT AGREEMENT INDEPENDENT CONTRACTOR  FOR REAL ESTATE ASSOCIATE

LINDA CAULFIELD, HEREINAFTER referred to as the Associate & HILTON JOHNSON REALTY, INC., As the Company, have entered into the following agreement.

This Contract shall Commence on or about October 27, 1986

Either party may cancel at any time, by giving notice to the other. All commissions shall be determined as stated herein subject to the following terms and conditions:

1. COMMISSIONS:

A. The Associate shall receive 65% of any gross commissions that he or she procures for the Company on 1st sale and then 70% of all other sales.

2. ADVERTISING & LONG DISTANCE CALLS:

A. The Associate is responsible for his or her expenses including all long distance calls and advertising, and M.L.S. fees.

*371 3. THE ASSOCIATE AGREES:

A. To abide by all the rules of the Company as determined by the "BROKER":
1. To not make expenditures without prior approval of the Broker.
2. To make sure floor time assigned is adequately covered when he or she cannot keep the regular floor time scheduled.
3. To keep current with all bills and dues.
4. Keep desk neat and clean and empty your wastebasket.
5. To conduct themselves in and around the office as a professional, and help maintain the Company's family atmosphere.
6. The Associate will be responsible for his or her own withholding and social security.

4. THE COMPANY AGREES:

A. To provide the Associate with a desk and telephone. (Shared at first if necessary)
1. Stationary & Stamps supplied when used for business.
2. M.L.S. Services, including use of the Realtron Computor.
3. Sales & training Classes (Voluntary basis)

5. THE COMPANY AGREES:

The BROKER agrees not to compete directly with the Associate specifically, floortime and protected territories.
The Broker will supply the office with up-dated research material.
According to the employment agreement, claimant, as a real estate agent, was regarded by the parties as an independent contractor. Further, under the contract, either party could terminate the agreement at any time; claimant was to receive commissions for sales she was able to procure for HJR; claimant was responsible for all of her expenses including long distance calls, advertising and M.L.S. fees; and claimant was responsible for her own withholding and social security. It is also worth noting that claimant received no fringe benefits such as insurance, vacation, and sick leave  items typically associated with an employer/employee relationship.
Furthermore, it is apparent from the testimony in this case that claimant always had complete control over the details of her work. The claimant was always in control of work hours and work days. She could come and go as she pleased, all depending upon how much business she had at a given time. Claimant was not told where to go, what to do and how to do it. See Pearson v. Harris, 449 So.2d 339 (Fla. 1st DCA 1984). There was never a requirement that the work be done in any particular manner. Moreover, the broker did not supervise the claimant, the latter having met, negotiated and contracted with prospective clients.[5]
The judge's reliance on the provisions of the agreement as evidence of the broker's control over the claimant is misplaced. The pertinent provisions simply regulate the cleanliness of claimant's work station, claimant's appearance and minor financial matters between the broker and *372 the claimant. No provision regulates the means by which the claimant procured sales for the company.
Further, the agreement's floor time provision is not sufficient to establish the requisite control. Merely expecting that a worker be present at a location during a particular time does not, by itself, transform an independent contractor into an employee. See F.L. Enterprises, Inc. v. Unemployment Appeals Commission, 515 So.2d 1340 (Fla. 5th DCA 1987). The floor assignment was not a strict requirement by the employer. Under the agreement, the claimant could reassign the floor time if she could not keep the regularly scheduled time. In addition, the floor time assigned to the claimant was very minimal in comparison to the total hours worked.
Analogous to the instant case is Florida Industrial Commission v. Schoenberg, 117 So.2d 538 (Fla. 3rd DCA 1960). There, the Third District affirmed the trial court's declaratory decree finding that a real estate broker was not, for workers' compensation purposes, the employer of a real estate salesman who was affiliated with his business. As in the instant case, the company in Schoenberg provided its salesmen with desks and telephones and paid all rents and utilities. All sales were solicited and consummated in the company's name. The salesmen had no authority to close transactions on their own, or to collect money. Either party could terminate the agreement at will without liability. The company paid no wages or salaries; rather, the salesmen were compensated by being entitled to 60% of the commissions accruing to the broker through their efforts. The salesmen had no expense accounts, and used their own judgment in contracting and negotiating with prospects. The salesmen were not accountable to the broker for their time or activities. The broker exercised no control over the manner, method and performances of the salesmen's services. The broker did not concern himself with the details of the salesmen's work, but only with the results thereof.
In determining that the legal relationship in Schoenberg was not that of employer/employee, the court relied on the "weight of authority" on the issue. 117 So.2d at 541. The court's research disclosed that the question had been answered in appellate courts in eight states and in two federal circuits, in cases presenting substantially similar circumstances, by holding that real estate salesmen are independent contractors and not employees of the broker. The court found that the principal facts as to the status of the salesmen and the degree of the broker's control were largely the same in each of these real estate salesmen cases. In holding that real estate salesmen are independent contractors, these cases applied generally accepted common law definitions of such a status. As recognized by the court:
They rely heavily on the presence or absence of supervisory power to control the method and detail of performance of the services rendered. Thus, absence of immediate control of such a real estate salesman, freedom of movement and activity in his work, and a free choice in the allocation and disposition of his time, have been held to establish the salesman's status as an independent contractor. See Louis A. Demute, Inc. v. Michigan Employment Security Comm., supra, 339 Mich. 713, 64 N.W.2d 545, 550 [(1954)]. The broker's right to terminate the salesman's services at any time is not per se indicative of an employee-employer status when other evidence fully supports the presence of an independent contractor relationship. California Employment Stabilization Comm. v. Morris, supra, 28 Cal.2d 812, 172 P.2d 497, 501 [(1946)].
117 So.2d at 542.
The court then addressed Florida cases which had dealt with the employee/independent contractor issue. The court in particular relied on the Supreme Court's decision in Baya's Bar & Grill v. Alcorn, 40 So.2d 468, 469 (Fla. 1949), which held as follows:
In the case of Gulf Refining Company v. Wilkinson, 94 Fla. 664, 114 So. 503, text 505 [(1927)]; it was stated that the right of control as to the manner of *373 doing work was the principal test in determining whether one engaged was an independent contractor or a servant and that another "test is whether the employee represents his employer as to the result of the work only, or as to the means as well as the result." So, if an employee is subject to the control or direction of the owner only as to the result, he is an independent contractor, but if controlled by the employer as to the means used, he is not.
The Schoenberg court considered the evidence against the background of the workers' compensation law and applied the rules set forth above to hold that "the chancellor's findings were amply supported by the record, and that his conclusions, following as they did the weight of authority on the questions of law involved, resulted in a correct decree, which we hereby affirm." 117 So.2d at 543.
Also instructive is F.L. Enterprises, Inc. v. Unemployment Appeals Commission, 515 So.2d 1340 (Fla. 5th DCA 1987). While that case arose in the context of unemployment compensation, the court in F.L. Enterprises, Inc. was faced with the same issue as in the instant case, i.e., whether the worker was an independent contractor or an employee, under circumstances which are strikingly similar to those in the instant case. In F.L. Enterprises, Inc., the worker, Jouben, was retained to find prospects for a company engaged in arranging for time share prospects to visit time share resorts. The company does not sell time share interests. Rather, it contracts with solicitors such as Jouben to approach tourists at Central Florida malls, hotels, and the like to arrange for them to tour particular resorts. The solicitor is paid a commission for each qualified prospect who is referred to a resort. This is the solicitor's only compensation, regardless of the time involved. Solicitors are informed when they are hired that they are independent contractors. They may work either a day or evening shift at a particular location. F.L. Enterprises makes the final decision as to hours when, and locations where the solicitors are to work. The solicitor is required to be present at a particular location during a particular shift. Solicitors receive no benefits such as vacation or insurance and neither social security nor income tax is withheld from their weekly paychecks. The solicitors have no quotas and they work without direct supervision. There is no formal training program for solicitors. Solicitors attend a weekly meeting where paychecks are distributed along with brochures provided by the time share resorts. Finally, solicitors are permitted to engage in outside employment so long as it is not in the same field. The referee concluded that Jouben was an employee because F.L. Enterprises exercised control over her by expecting her to attend the weekly meetings, by scheduling the time and place of her work, by making periodic visits to her location, and because F.L. Enterprises controlled the final product.
The Fifth District held that the right of control as to the mode of doing the work is the principal consideration in determining whether a person is an employee or independent contractor. The court found that the evidence in that case clearly established that F.L. Enterprises exercised no control over the details of the solicitor's work. The court noted that while Jouben was expected to work particular times and locations, she notified F.L. Enterprises what periods she would be available for work. Furthermore, merely expecting that a worker be present at a particular location during a particular time does not, without more, transform the worker from an independent contractor to an employee. 515 So.2d at 1342. Further, as to the weekly meetings, Jouben would not have been discharged if she had failed to attend. The court also relied on other indicia of independent contractor status, such as a lack of fringe benefits and the absence of withholding for taxes and social security from the solicitor's pay, payment by way of commission, the existence of an agreement indicating that both the company and Jouben considered the solicitors to be independent contractors, and the fact that Jouben could hold other employment. Under such circumstances, the court concluded that the evidence established that Jouben was an *374 independent contractor and reversed the referee's decision.
Likewise, in the instant case, there is a lack of substantial evidence to support the judge's conclusion that claimant was an employee of HJR. Rather, the evidence only supports the conclusion that claimant was an independent contractor within the meaning of Section 440.02(11)(d)1., Fla. Stat. (1987). There is nothing in the agreement or in the testimony presented below to indicate that the broker had control over the means by which the claimant procured sales in her position as a realtor. Nothing in this case suggests that claimant was subject to any more control than that which exists in the typical real estate agent/broker relationship, a relationship which is recognized by statutory and case law as involving independent contractor status. See § 440.02(11)(d)1., Fla. Stat. (1987); Florida Industrial Commission v. Schoenberg, supra, and cases cited therein.
Because she was an independent contractor, claimant's earnings from her concurrent employment with HJR should not have been included in the determination of her AWW. Accordingly, that portion of the judge's order including claimant's pre-injury earnings as a real estate agent in the determination of her AWW is reversed and this case remanded for further proceedings consistent herewith.[6]

III.
Appellants further assert that the judge erred in awarding temporary partial disability (TPD) benefits to the claimant. To establish eligibility for TPD benefits, a claimant has the initial burden of presenting evidence of a change in his employment status due to the compensable injury and of an adequate, good faith work search. Tampa Electric Company v. Bradshaw, 477 So.2d 624 (Fla. 1st DCA 1985); D & R Builders, Inc. v. Quetglas, 449 So.2d 988 (Fla. 1st DCA 1984); Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982). Once the claimant has met this initial burden, the burden is then *375 placed upon the employer to demonstrate that the claimant has refused to work or that he has voluntarily limited his income. Id. Whether a claimant has shown a causal relationship between an injury and a change in employment status is a factual question to be determined by the judge, and a finding of the existence of such causal relationship must, of course, be based upon competent substantial evidence. Trujillo v. Southern Wine & Spirits, 525 So.2d 481 (Fla. 1st DCA 1988).
The problem in the instant case concerns the adequacy of the claimant's work search. Concerning this issue, the judge made the following finding in his order:
14. I find that the Claimant conducted a good and valid job search, that is obvious from the fact that she worked for several employers, including herself, Burdine's, Florida Legal Secretarial Service.
A review of the record in this case establishes that the judge's finding on this issue is not supported by competent substantial evidence. Rather, the evidence establishes that claimant's job search was inadequate and that she did in fact voluntarily limit her income.
Claimant claims entitlement to TPD benefits from January 4, 1988 through July 11, 1988. During this time period, claimant essentially worked for herself as a real estate broker (December 1987  July 1988) and maintained contact with Florida Legal Secretaries, Inc. (FLS), a secretary placement service. The judge asserts that claimant conducted a valid work search by virtue of the fact that she "worked" for several employers, including Burdine's, FLS, and herself. However, the record indicates that during the entire six month period for which benefits are sought, claimant only worked for approximately two weeks (through 1/16/88) for Burdine's and one day (1/5/88) for an attorney. The remainder of the time she maintained contact with one secretary placement agency and worked for herself as a real estate broker.
In passing on the sufficiency of a work search or whether claimant has voluntarily limited her employment, the responsibility of the judge is to decide whether claimant's efforts were reasonable and performed in good faith in light of all the circumstances: actual physical impairment, age, industrial history, training, education, motivation, work experience, work record, diligence, and the like. Paramount Poultry v. Mims, 472 So.2d 1281 (Fla. 1st DCA 1985). In view of the circumstances in this case, certainly maintaining contact with one placement agency cannot be deemed sufficient.
We are thus left to consider whether claimant's efforts to establish her own business were sufficient to substitute for an adequate work search. Instructive on this issue is Western Union Telegraph Company v. Perri, 508 So.2d 765 (Fla. 1st DCA 1987). In that case, the claimant sought wage-loss benefits for three months during which he had pursued his own real estate business. The claimant had earned no money during the first two months; in the third month claimant handled a closing which resulted in the later receipt of a commission. The deputy denied wage-loss benefits for the first two months finding that Perri had voluntarily limited his income. However, wage loss was awarded for the third month.
The claimant appealed the finding of voluntary limitation and this court affirmed, holding as follows:
[W]hile self-employment as a realtor may in appropriate circumstances preclude the necessity of a work search as an evidentiary method to establish causal connection between diminished wages and an industrial injury, this is not a per se rule of application in all cases. Rather, whether a claimant's effort to establish his own business is bona fide and sufficient to substitute for an adequate job search is a question which is dependent on the circumstances. See e.g., Custom Paints v. Philbrick, 490 So.2d 1352 (Fla. 1st DCA 1986).
* * * * * *
Although the deputy recommenced wage loss benefits... when the character of claimant's efforts was shown by a real estate closing which produced a subsequent *376 commission ... the deputy could nevertheless find that prior to [that time] claimant's efforts were not shown to be bona fide or reasonable, and thus constituted a voluntary limitation of income. (e.s.)
508 So.2d at 767.
According to Western Union, then, whether a claimant's effort to establish his own business is bona fide and sufficient to substitute for a work search is a factual determination, and therefore our inquiry is limited to whether there is competent substantial evidence to support the judge's finding. See Old Cove Condo v. Curry, 511 So.2d 666 (Fla. 1st DCA 1987). In the present case there is no evidence which establishes that claimant's efforts to establish her real estate business were bona fide and therefore sufficient to substitute for an adequate work search. Claimant's testimony reveals that in December 1987, she set up an office in Fort Lauderdale and operated as a sole proprietorship. While in business for herself, claimant earned approximately $678 in referrals. Claimant also testified that there was another transaction for $1,000, but the contract was cancelled. Claimant further testified that she had several deals pending which, once they reached fruition, would result in a considerable amount of money.
The "character of claimant's efforts" in this case is demonstrated by the fact that during the seven-month period that she was in business for herself, she earned $678 from referrals. Even taking into account the nature of the real estate business, in which a salesperson may not be paid until a sale is consummated and the deal is closed, plus the fact that claimant was only working part-time, claimant's earnings of $678 over a seven-month period is insufficient to establish a bona fide effort on claimant's part to establish her own business. Cf. Old Cove Condo v. Curry, 511 So.2d 666 (Fla. 1st DCA 1987) (claimant's efforts held to be bona fide since the "character of his efforts" was shown by the fact that during the two weeks in which he operated his business, he earned $817; no abuse of his discretion in awarding wage-loss benefits for the period during which claimant was "actively and productively self-employed").
It is apparent from the evidence in this case that claimant voluntarily limited her income by failing to conduct an adequate work search. However, claimant's entitlement to wage-loss benefits is not automatically foreclosed. See Hillsborough County Employees Credit Union v. Tamargo, 477 So.2d 652 (Fla. 1st DCA 1985). The work search requirement must be applied as an "evidentiary test for employability," and not as a condition precedent to any consideration of the merits of a wage loss claim. The work search test is merely the evidentiary vehicle by which employability, or lack of it, is proven, and there are a number of criteria by which wage-earning capacity must be measured, and no single factor is conclusive. Anderson v. S & S Diversified, Inc., 477 So.2d 591, 594 (Fla. 1st DCA 1985). Thus, for example, while the lack of a work search will preclude compensation whenever a search would be essential to establish ability or inability to earn, it will not preclude compensation when an inability to earn rests, in whole or in part, on a medical prohibition as to which a search for other medically permissible work is not relevant. Publix Supermarkets, Inc. v. Franklin, 467 So.2d 1031 (Fla. 1st DCA 1985). Under such circumstances, medical opinion evidence may be sufficient to establish that a claimant's diminution in earnings is causally related to the industrial accident. Id.
In the present case, although claimant did not meet her initial burden with respect to that work for which she was medically released, she did meet her burden with respect to the remaining economic loss from her medical incapacity to do the amount and type of work to which she was accustomed. Prior to the November 3, 1987 accident, claimant worked full-time (40 + hours per week) for Hilton Johnson Realty and part-time (24 hours per week) for the Law Office of Michael Edwards. As a result of the accident, according *377 to Dr. Ruddy, claimant cannot work more than 20-30 hours per week, on a part-time light duty basis.[7]
Under such circumstances, claimant is entitled to a wage loss award based on her "deemed earnings," pursuant to Section 440.15(4)(b), Florida Statutes, which provides that when a claimant voluntarily limits his income, temporary partial disability benefits shall be based upon "the amount which would have been earned if the employee did not limit his income or accepted appropriate employment." See Sigma Con Commercial Division v. Calhoun, 475 So.2d 733 (Fla. 1st DCA 1985) (where medical evidence indicated that claimant was restricted as to type of work he could perform, deputy properly applied deemed earnings provision and awarded wage-loss benefits even though deputy found that claimant had not performed an adequate work search); Publix Supermarkets, Inc. v. Franklin, 467 So.2d 1031 (Fla. 1st DCA 1985) (medical opinion evidence that claimant would be able to earn only $140 per week with her disability met her burden of establishing economic loss from her incapacity to do her former work, such that she was entitled to compensation for the difference between her earning capacity and her former wage, according to the statutory formula, notwithstanding voluntary limitation of income due to inadequate work search).
Accordingly, that portion of the judge's order including claimant's pre-injury earnings as an independent contractor with HJR in the determination of claimant's AWW is REVERSED. This case is REMANDED for (1) a proper calculation of claimant's AWW in accordance with Section 440.14, Florida Statutes (1987) and (2) application of the "deemed earnings" provision of Section 440.15(4)(b), Florida Statutes (1987).
WENTWORTH and ZEHMER, JJ., concur.
NOTES
[1] On January 15, 1988, claimant had filed her initial claim for benefits for the accident occurring on November 3, 1987. On March 7, 1988, treatment was authorized by the carrier with Dr. Ruddy. On April 8, 1988, the employer/carrier filed a Notice to Controvert.
[2] TPD forms were filed covering the period from January 4, 1988 through July 11, 1988.
[3] Staff of Fla.H.R.Comm. on Commerce, HB 480 (1977) Staff Report (April 27, 1977) (Florida State Archives).
[4] In a statement of legislative intent issued by the Legislature in connection with this statutory amendment, the Legislature recognized that a large number of real estate salesmen are actually independent contractors. Staff of Fla.H.R. Comm. on Commerce, HB 480 (1977) Staff Report 2 (April 27, 1977) (Florida State Archives).
[5] We recognize, however, that claimant also testified that HJR "supervised" her work:

Q. How did they supervise your work?
A. Anything I did had to go under the direction of the broker that I worked for. He had to approve all the contracts I brought in. I had to attend sales meetings and he had to oversee everything I did.
Claimant's testimony regarding such "supervision" is insufficient to establish her status as an "employee" rather than an independent contractor. Claimant herself testified that she was employed full-time by HJR as an independent contractor. Further, the fact that the broker had to approve all of the contracts claimant brought in simply represents the broker's control as to the results of claimant's work as a real estate agent, and not as to the means by which these results were achieved. Also, the sales meetings claimant attended were, according to the contract, voluntary, and thus claimant could not have been discharged for failing to attend. See F.L. Enterprises, Inc. v. Unemployment Appeals Commission, 515 So.2d 1340 (Fla. 5th DCA 1987). The above testimony, when viewed in light of the substantial evidence in this case indicating an independent contractor status, as well as the statutory and case law on this subject, see cases cited infra, is clearly insufficient to constitute competent substantial evidence to support the judge's conclusion that claimant was not an independent contractor.
[6] Our decision that claimant was in fact an independent contractor during her concurrent full-time employment with HJR during the thirteen weeks prior to her injury does not foreclose the judge below from calculating claimant's AWW based on her status as a full-time worker. In fact, the pertinent statute provides that a claimant will be considered a part-time employee for purposes of determining average weekly wage only if each of the following three factors are established by competent substantial evidence: (1) claimant was a part-time worker at the time of the injuries; (2) claimant has adopted part-time employment as a customary practice; and (3) claimant would have remained a part-time worker during the period of disability. See § 440.14(1)(f), Fla. Stat. (1987); Eaton v. Pinebrook Place Health Care Center, 506 So.2d 1148 (Fla. 1st DCA 1987).

Section 440.14(1)(f) recognizes that it would be inequitable to compensate a worker only on the basis of his part-time earnings or capacity if such part-time status was not voluntarily assumed. It is apparent from the record in this case that the claimant had not adopted part-time employment as her customary practice. At the time of the injury, claimant was engaged in full-time employment with HJR and part-time employment with the employer herein. It is obvious that claimant was not electing to limit her wage-earning capacity. Accordingly, pursuant to the statute, claimant's AWW should be calculated on the basis of her status as a full-time worker.
We recognize, of course, that claimant's earnings as an independent contractor in her full-time concurrent employment with HJR are not includable in determining her compensation base. Sunshine Ace Hardware v. Gray, 541 So.2d 1236 (Fla. 1st DCA 1989); Randell, Inc. v. Chism, 404 So.2d 175 (Fla. 1st DCA 1981). However, the fact that her full-time earnings as an independent contractor are to be excluded from the AWW computation does not preclude the judge of compensation claims from considering claimant's status as a full-time worker. To hold otherwise would result in an AWW determination which is not truly representative of claimant's pre-injury earning capacity, and would violate the underlying purpose of the Act. If an injury occurring on the part-time job has disabled an employee from working at his full-time job, his capacity as a wage-earner is impaired beyond the limits of his part-time job. The purpose of the Act is to compensate the worker for his loss of wage-earning capacity due to a work-connected injury. It is the capacity of the "whole man," and not the capacity of the part-time or full-time worker, that is involved. See American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla. 1972).
Accordingly, on remand, the judge shall calculate claimant's AWW on the basis of her status as a full-time worker under either Sections 440.14(1)(b) or (d), whichever the judge should find appropriate.
[7] Claimant's description of her condition at the time of the hearing further illustrates a causal connection between her diminution in earnings and the industrial accident. Claimant testified that because of the pain in her lower back and legs, she has difficulty sitting and standing for long periods of time. After about an hour on her feet, she has to sit down. Significantly, claimant asserted that she has not been able to work as much as she was able to work before the accident. In describing the difference to the judge below, the claimant stated as follows:

A. Well, before the accident I was able to take people around for real estate, and sometimes I would be gone twelve hours a day and I just can't do that anymore.