LOUIS A. DEMUTE, INC., v. EMPLOYMENT
SECURITY COMMISSION.

1. JUDGMENT—SUMMARY JUDGMENT—SUFFICIENCY OF SUPPORTING
AFFIDAVIT.

Absence of statement in affidavit in support of motion for sum-
mary judgment that affiant believed there was no defense to
the action, a good ground for either dismissing the motion
or at least not considering it until, by amendment or the filing
of a new affidavit, the statutory requirement has been met,
came too late as an objection when first mentioned on appeal
without having been included in its statement of reasons and
grounds for appeal (CL 1948, § 618.9; Court Rules No 27,
§ 6; No 30; No 66, § 3 [1945]).

2. SAME—SUMMARY JUDGMENT—AFFIDAVIT OF MERITS.

No question of fact preventing the entry of a summary judgment
was presented by affidavit of merits which, so far as facts
were concerned was in agreement with the basic facts set
forth in plaintiff's supporting affidavit and motion (Court
Rule No 30 [1945]).

3. UNEMPLOYMENT COMPENSATION—DELEGATION OF LEGISLATIVE AU-
THORITY.

Provision of State unemployment compensation act imposing lia-
bility for contributions upon employers who were liable for
payment of any Federal tax against which credit might be
taken for contributions required to be paid into a State un-
employment compensation fund *held*, not to have constituted
an unlawful delegation of legislative authority to congress
(CL 1948, § 421.42).

4. SAME—CONSTRUCTION OF STATUTES—COMMON LAW.

The term "employment," as used in Federal act imposing a tax
on employers, which act is referred to in State unemployment
compensation act, is construed according to common-law prin-
ciples (26 USCA, § 1607[c]; CL 1948, § 421.42[7]).

5. SAME—REAL-ESTATE LICENSE LAW—CONSTRUCTION OF STATUTES.

The real-estate license law need not be read into the State un-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 41 Am Jur, Pleading § 340.
[3] 11 Am Jur, Constitutional Law § 219.
[7] 14 Am Jur, Costs § 91.

employment compensation act as the statutes were not designed to effectuate a common result, the terms of the former law being only one factor in determining whether a common-law employer-employee relationship existed between the broker and salesmen; such statute not being interpreted so as to give a meaning beyond its realm and scope (CL 1948, § 421.42; § 451.201 *et seq.*)

6. Same—Real-Estate Salesmen—Common Law.
    Real-estate salesmen who were paid by plaintiff broker solely on a commission basis were not within the common-law definition of employees, where they had no regular working hours, quota, expense allowance or reports, no specific desk space in plaintiff's office nor subject to plaintiff's control; hence plaintiff was not liable for contributions under the unemployment compensation act (CL 1948, § 421.42).

7. Costs—Public Question—Construction of Statutes.
    No costs are allowed in proceeding involving construction of the unemployment compensation act, a public question being involved (CL 1948, § 421.42).

Appeal from Oakland; Holland (H. Russel), J. Submitted April 8, 1954. (Docket No. 38, Calendar No. 46,082.) Decided June 7, 1954.

Action by Louis A. Demute, Inc., a Michigan corporation, against Employment Security Commission for refund of payments made on unemployment tax. Summary judgment for plaintiff. Defendant appeals. Affirmed.

*Davis & Thorburn* (*James S. Thorburn*, of counsel), for plaintiff.

*Frank G. Millard*, Attorney General, *Edmund E. Shepherd*, Solicitor General, and *John J. Long* and *George M. Bourgon*, Assistants Attorney General, for defendant.

*Amicus curiae:*

*Maurice A. Glasier* (*Harold Helper*, of counsel).

BUTZEL, C. J.  Louis A. Demute, Inc., a Michigan corporation, plaintiff and appellee, is a licensed real-estate broker conducting business in the city of Royal Oak, Oakland county, Michigan.  During the years 1948 to 1950, inclusive, the period involved herein, 8 or more individuals were associated with plaintiff in each of 20 different weeks within each of the calendar years.  CL 1948, § 421.41 (Stat Ann 1950 Rev § 17.543) ; 26 USC, § 1607(a).  One to 3 of those individuals were salaried employees and were associated with the plaintiff in an undisputed employer-employee relationship.  The balance of the 8 or more individuals were associated with the plaintiff as real-estate salesmen duly licensed under the provisions of PA 1919, No 306, as amended (CL 1948, § 451.201 *et seq.* [Stat Ann and Stat Ann 1953 Cum Supp § 19.791 *et seq.*]).  The real-estate salesmen were associated with the plaintiff under an oral agreement whereby, in consideration for securing listings for plaintiff and for securing purchasers for real estate listed with plaintiff, the salesmen were paid a percentage of the real-estate commissions received by plaintiff for consummating real-estate transactions.  These salesmen had no regular working hours and they attended no sales meetings; they could work or not work as they saw fit; they could secure their own listings for property to be sold, such listings to be in the name of the plaintiff; no quota was required of them; they took their vacations when they desired and could take them at the same time even if it was thereby necessary to close the office of plaintiff; they provided their own automobiles, gasoline and oil and paid for their own public-liability insurance; they paid for the printing of their own business cards; they filed no reports; they had no specific desk space in plaintiff's office; they were not reimbursed for business phone calls made on their residential phones.  It is the conten-

tion of the plaintiff that these salesmen were independent contractors and not employees within the common-law definition of that term.

For the years 1948 to 1950 plaintiff paid to the Michigan employment security commission (at that time named the Michigan unemployment compensation commission), defendant, the total amount of $2,984.26 as required unemployment compensation contributions. During the same period plaintiff was required to pay to the Federal government taxes under the Federal employment tax, 26 USCA, § 1600 *et seq.* On December 8, 1950, the internal revenue bureau, following a decision in the United States court of appeals, eighth circuit, which cited authorities in support of its position, in the case of *Dimmitt-Rickhoff-Bayer Real Estate Co.* v. *Finnegan,* 179 F2d 882, reversed its previous ruling and held that real-estate salesmen associated with a real-estate broker in a relationship comparable to that of the salesmen in the *Dimmitt-Rickhoff-Bayer Case, supra,* were not to be considered employees for the purposes of the Federal employment tax. In February, 1952, the Federal government returned to the plaintiff the amount of taxes previously paid. These sums were refunded to the plaintiff upon the theory that the taxes had been erroneously collected since the real-estate salesmen associated with plaintiff were not employees within the meaning of the Federal employment tax act. Plaintiff was compelled to pay contributions to the Michigan employment security commission under the Michigan statute only because it was compelled to pay under the so-called "recapture clause" of the State act (CL 1948, § 421.42 [7] [Stat Ann 1950 Rev § 17.545(7)]), the Federal tax on the "employment" of real-estate salesmen. Plaintiff, therefore, after the refunding of the Federal tax, exacted through admitted error, instituted an action in the circuit court for the county of Oakland

to recover the amount of contributions paid to the defendant under the Michigan statute. Plaintiff's motion for a summary judgment was granted. From that judgment defendant has appealed.

The first question raised on appeal concerns the propriety of the trial judge's action in granting plaintiff's motion for a summary judgment. Defendant claims that the trial judge was in error in that, (1) plaintiff's affidavit in support of the motion failed to state that it was the affiant's belief that there were no defenses to the action, and (2) plaintiff's affidavit in support of its motion and defendant's affidavit of merits filed in opposition thereto raised factual issues which precluded the trial judge from granting plaintiff's motion. Defendant claims that under the summary judgment statute, CL 1948, § 618.9 (Stat Ann § 27.989), and Michigan Court Rule No 30 (1945), the summary judgment granted in this case was improper and cites as authority *Gloeser* v. *Moore,* 284 Mich 106.

Defendant for the first time in this Court claims that the motion for summary judgment was fatally defective in that the affidavit in support of the motion did not follow the statute which provides for the affiant's statement that it is his belief that there is no defense to the action. Such averment was included in the motion for a summary judgment but not included in the supporting affidavit. There is no question but that plaintiff should have included the necessary averment, the absence of which would have been good grounds for either dismissing the motion or at least not considering it until, by amendment or the filing of a new affidavit, the statutory requirement had been met. Defendant, however, stood by, apparently accepted the affidavit as sufficient, never mentioned the defect during the hearing on the motion, and did not include such omission as error in its statement of reasons and grounds for ap-

peal. The objection on the part of the defendants comes too late. See Michigan Court Rules No 27, § 6, and No 66, § 3 (1945); *DesRoches* v. *McCrary,* 315 Mich 611; *In re Orr's Estate,* 297 Mich 37.

Defendant asserts that factual issues were raised by its answer and its affidavit of merits in opposition to the motion for the summary judgment. Eight of the 11 paragraphs of defendant's affidavit of merits were in agreement with the facts set forth by plaintiff. Paragraph 11 set forth a conclusion of law determinative of all the issues involved in the litigation. Paragraphs 2 and 4 referred to PA 1919, No 306, as amended (CL 1948, § 451.201 *et seq.* [Stat Ann and Stat Ann 1953 Cum Supp § 19.791 *et seq.*]) and asserted that the above statutes and the rules and regulations thereunder subjected the real-estate salesman licensed under the provisions of the statute to the control of the broker by whom the salesmen were employed. This assertion by defendant set forth a conclusion based upon a question of law. The basic facts set forth in plaintiff's affidavit in support of its contention that the salesmen were independent contractors and not employees were not denied by defendant in its affidavit of merits. There were, therefore, no questions of fact preventing the entry of a summary judgment.

Section 42 of the Michigan unemployment compensation act (so named during the period herein involved) provides, in its pertinent portions, as follows (CL 1948, § 421.42 [Stat Ann 1950 Rev § 17.-545]):

"(6) Except as otherwise provided in subsection (7) of this section the term 'employment' shall not include:  *  *  *

"(k) Service performed by real-estate salesmen and agents of insurance companies who are compensated principally or wholly on a commission basis. *  *  *

· "(7) Notwithstanding the provisions of subsection (6) of this section, any services performed for an employing unit, with respect to which such employing unit is liable for any Federal tax against which credit may be taken for contributions required to be paid into a State unemployment compensation fund, shall be deemed to constitute employment for the purposes of this act, but only to the extent that such services constitute employment with respect to which such Federal tax is payable."

It is admitted that plaintiff's salesmen were compensated wholly on a commission basis. It is the contention of defendant that plaintiff, although specifically excluded by subsection (6)(k) of the act, is liable for State unemployment contributions in that subsection (7), referred to as the recapture clause, acts as a condition subsequent to the exclusion indicated under subsection (6)(k). Defendant asserts that the real-estate salesmen associated with plaintiff were engaged in such a relationship with plaintiff so as to subject plaintiff to liability under the Federal employment tax act. Therefore, defendant contends that plaintiff is liable for contributions to the State unemployment compensation fund. The fundamental issue is to be resolved by a determination of whether or not plaintiff is liable as an employer for taxes under the Federal act.

26 USCA, § 1600 provides:

"Every employer (as defined in section 1607[a]) shall pay for the calendar year 1939 and for each calendar year thereafter an excise tax, with respect to having individuals in his employ."

26 USCA, § 1607(a) provides:

"The term 'employer' does not include any person unless on each of some 20 days during the taxable year, each day being in a different calendar week, the total number of individuals who were employed

by him in employment for some portion of the day (whether or not at the same moment of time) was 8 or more."

26 USCA, § 1607(c) provides:

"The term 'employment' means any service performed prior to July 1, 1946, which was employment as defined in this section as in effect at the time the service was performed; and any service, of whatever nature, performed after June 30, 1946, by an employee for the person employing him."

26 USCA, § 1607(c) enacted August 14, 1935, c 531, title 9, § 907(c), 49 Stat 643, stated:

"The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except." (Exceptions not pertinent.)

In *Lievense* v. *Unemployment Compensation Commission,* 335 Mich 339, this Court construed CL 1948, § 421.42(7) (Stat Ann 1950 Rev § 17.545[7]), as being constitutional and not constituting an unlawful delegation of legislative authority to Congress in that the terms "is liable" and "is payable" were to be interpreted within the meaning of the Federal act at the time subsection 42(7) was enacted. See also, *Minor Walton Bean Co.* v. *Unemployment Compensation Commission,* 308 Mich 636; *Colony Town Club* v. *Michigan Unemployment Compensation Commission,* 301 Mich 107. Such reasoning applies to the present case.

In *Bonifas-Gorman Lumber Co.* v. *Unemployment Compensation Commission,* 313 Mich 363, this Court held that the word "employment" as used in the Federal act was to be interpreted under common-law principles. Justice CARR there stated (p 373):

"The practical situation is that, unless resort is had to principles commonly recognized as controlling at common law, there is no certain and definite basis on which reliance can be placed in determining whether the 'employer-employee' relationship exists for the purposes of title 9 of the social security act. It is our conclusion that Congress intended that these terms should be used in their common-law significance."

Are plaintiff's real-estate salesmen "employees" within the common-law interpretation of that term? Or is their relationship with plaintiff that of independent contractors, thereby excluding plaintiff from liability under the Federal act?

Despite the association factors, mentioned above, that are strongly indicative of an independent contractor relationship, defendant contends that the Michigan real-estate license law, *supra,* imposes upon the real-estate broker the duty of controlling the activities of its salesmen and that the act, in effect, abrogated the relationship of independent contractor between real-estate broker and real-estate salesmen. Section 2 of that act defines a real-estate salesman as "any person who for compensation or valuable consideration is employed either directly or indirectly by a licensed real-estate broker." A reading of the act discloses many references to the salesmen as employees and to the broker as the employer; admittedly the relationship is described as that of employment. Defendant further contends that the case of *Thompson* v. *Carey's Real Estate,* 335 Mich 474, established the relationship between real-estate broker and salesmen under the statute as that of a common-law employer-employee relationship.

There is no conclusive reason why the terms of the real-estate license law should be read into the Michigan employment security act. The statutes were not

designed to effectuate a common result. The terms of the real-estate license law must be taken as only one factor along with the many others in determining whether a common-law employer-employee relationship existed between the broker and salesmen. It is not alone determinative of the relationship. As was stated in the case of *California Employment Stabilization Commission* v. *Morris,* 28 Cal2d 812, 817 (172 P2d 497):

"The real estate act, *supra,* does not establish as a matter of law the status of every salesman as being 'in employment' within the meaning of the unemployment insurance act. The licensing statute was not promulgated for that purpose; it was designed for the protection of the public, the primary function being to allow only those persons to operate as real-estate brokers and salesmen who are honest, truthful, and of good reputation. * * * The act operates in a comparatively narrow field and the legislation should not be interpreted so as to give a meaning beyond its realm and scope."

See, also, *Guaranty Mortgage Co. of Nashville* v. *Bryant,* 179 Tenn 579 (168 SW2d 182); *Koehler* v. *Myers,* 21 F2d 596; *In the Matter of Wilson Sullivan Company, Inc.,* 289 NY 110 (44 NE2d 387).

The salesmen associated with plaintiff were not employees within the common-law definition of that term. Under the usual tests involving the right of control, reiterated in *Bonifas-Gorman Lumber Co.* v. *Unemployment Compensation Commission, supra,* the salesmen cannot be classified as common-law employees. In an analogous case, *Henry Broderick, Inc.,* v. *Squire,* 163 F2d 980, the court stated (p 982):

"By contrast, the appellant in this case exercises a minimum of control over the brokers, who are not compelled to attend meetings, make reports, keep regular hours or make specific calls. In fact, they are free to come and go as they please, plan their

own strategy, and give as little or as much time to appellant's business as they desire."

In *Dimmitt-Rickhoff-Bayer Real Estate Co.* v. *Finnegan, supra,* the court of appeals, eighth circuit, on a comparable factual situation stated (pp 887, 888):

"An analysis of the opinion of the supreme court in the cases of *United States* v. *Silk,* and *Harrison* v. *Greyvan Lines, Inc.,* 331 US 704 (67 S Ct 1463, 91 L ed 1757), indicates to our minds that a ruling that the plaintiff in the instant case, under its arrangement with its salesmen, had retained the right to control the manner in which they were to accomplish results, is not justified by the evidence. * * * Here we are concerned with competent salesmen, almost entirely dependent upon their own initiative, efforts, skill, and personality for success, working upon their own time, at their own expense, and deriving their remuneration from the results of their work."

The trial judge properly entered a summary judgment for the plaintiff. The judgment is affirmed, without costs, a public question being involved.

CARR, BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.