LINTON v ARENAC COUNTY ROAD COMMISSION

Docket No. 262571. Submitted October 12, 2006, at Petoskey. Decided November 28, 2006, at 9:10 a.m. Leave to appeal denied, 477 Mich 1114.

Dave and Marilyn Linton brought an action in the Arenac Circuit Court against the Arenac County Road Commission, seeking damages after a backup of water in a roadside drainage ditch flooded their property. The plaintiffs alleged that the defendant had deposited debris in the ditch that eventually dammed a culvert. The defendant moved for summary disposition on the ground of governmental immunity. The court, Ronald M. Bergeron, J., granted the motion, concluding that the ditch was not a drainage system to which the sewage disposal system event exception to governmental immunity applied. The plaintiffs appealed.

The Court of Appeals *held*:

A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the claimant shows that the requirements of the exception found in MCL 691.1416 through 691.1419 for sewage disposal system events are met. The sewage disposal systems to which the exception applies include storm water drain systems that carry drainage water, rather than just sewage or waste matter. The roadside drainage ditch in this case is a storm water drain for purposes of the exception. It is necessary to remand the case, however, for further discovery concerning whether the ditch is part of a system of connected drains, that is, an assemblage or combination of drains that forms a complex or unitary whole. If it is, then the overflow and flooding that occurred here was a "sewage disposal system event" as defined in MCL 691.1416(k).

Reversed and remanded.

GOVERNMENTAL IMMUNITY — EXCEPTIONS TO IMMUNITY — SEWAGE DISPOSAL SYSTEM EVENTS — DRAINS.

The sewage disposal systems to which the sewage disposal system event exception to governmental immunity applies include systems of storm water drains that carry drainage water, rather than just sewage or waste matter; a roadside drainage ditch that serves

as a conduit for the drainage of storm water is a storm water drain, and a drain system is an assemblage or combination of drains that forms a complex or unitary whole (MCL 691.1416[j], [k]; 691.1417[2]).

*Mark A. Rousseau* for the plaintiffs.

*Fordney, Prine & Coffey* (by *Andrew W. Prine, P.C.*) for the defendant.

Before: WHITBECK, C.J., and MURPHY and SMOLENSKI, JJ.

PER CURIAM. Plaintiffs Dave and Marilyn Linton appeal as of right the trial court's order granting summary disposition for defendant Arenac County Road Commission (the Road Commission) on the basis of governmental immunity. This case involves a dispute regarding whether a rural, roadside drainage ditch is a "storm water drain system" as set forth in MCL 691.1416(j). We reverse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The Lintons alleged that in the fall of 2003, the Road Commission cut down trees, limbs, and branches along Roseburgh Road, which is near the Lintons' Moffatt Township home, and deposited this debris into a roadside drainage ditch. In March 2004, spring rains floated the debris down the roadside drainage ditch and formed a dam at a culvert near the Lintons' property; this dam in turn caused the Lintons' property to flood. The Lintons notified the Road Commission of the problem on March 26 and April 16, 2004. The Road Commission took no action, and on May 14, 2004, heavy rainfall caused "an overflow and back up" of water that damaged the Lintons' house, barn, furniture, and other personal property.

The Lintons filed suit against the Road Commission under the "sewage disposal system event" exception[1] to the governmental immunity act. More specifically, they alleged that the roadside drainage ditch and culvert were "a storm water drain system," as that term is used in the statutory definition of "sewage disposal system."[2] According to the Lintons, the Road Commission breached its duty to maintain the roadside drainage ditch and culvert, which, they asserted, were under the jurisdiction and control of the Road Commission.

The Road Commission moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing that the roadside drainage ditch and culvert were not part of any "sewage disposal system" or "storm water drain system" and that the event at issue was not a "sewage disposal system event."[3] The Road Commission attached an affidavit from its Engineer/Manager, Darren J. Pionk, stating that Moffatt Township did not have a sewage disposal system and that residents used private drain fields. Pionk also opined that the roadside drainage ditch at issue was not a county drain and was not part of any sewage disposal system or storm water drain system. According to the Road Commission, the Lintons were attempting to extend its liability to a "simple roadside ditch, in a circumstance which does not involve the overflow or backup of sewage . . . ." The Road Commission asserted that the phrase "storm water drain system" referred solely to urban, underground storm drains that connect to a sewage system.

The Lintons responded, arguing that the Road Commission was impermissibly attempting to read additional language into the plain text of the statute by

---

[1] MCL 691.1417.

[2] MCL 691.1416(j).

[3] MCL 691.1416(k).

contending that "storm water drain system" referred to urban, underground storm drains. They provided an affidavit from engineer Jon W. Ledy, opining that "[r]oadside ditches are primarily designed and maintained to drain storm water from one point to another" and that "[i]n rural areas they perform the same functions as underground storm drains . . . ." The Lintons also argued that if the statute were to be so construed, then persons living in rural areas would be denied their constitutional right to equal protection under the law. The Lintons additionally argued that allowing water to flood land adjacent to rural roadside drainage ditches without any accountability constituted an unconstitutional taking without due compensation.

After hearing oral arguments on the motion, the trial court granted summary disposition in favor of the Road Commission, stating: "I don't think this is a drainage system. I don't think a road ditch is a drainage system as defined by that statute. If they meant road ditch or plowed furrow, the legislature would have said that."

The Lintons now appeal as of right the trial court's order granting summary disposition for the Road Commission on the basis of governmental immunity.

## II. SEWAGE DISPOSAL SYSTEM EVENTS AND GOVERNMENTAL IMMUNITY

### A. STANDARD OF REVIEW

The Lintons argue that the trial court erred in failing to recognize that a rural roadside drainage ditch is part of a "sewage disposal system" within the sewage disposal system event exception to governmental immunity. More specifically, they argue that the roadside drainage ditch and culvert are "a storm water drain

system," as that term is used in the statutory definition of "sewage disposal system."

Under MCR 2.116(C)(7), a party may move for summary disposition on the ground that a claim is barred because of immunity granted by law. The governmental immunity act[4] provides "broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function[.]"[5] To survive a C(7) motion raised on these grounds, the plaintiff must allege facts warranting the application of an exception to governmental immunity.[6]

Although, generally, when considering a motion brought under MCR 2.116(C)(8), the legal basis of the complaint is tested by the pleadings alone,[7] when considering a motion brought under both MCR 2.116(C)(7) and (8), it is proper for the court to review all the material submitted in support of, and in opposition to, the plaintiff's claim.[8] Neither party is required to file supportive material, but any documentation that is provided to the court must be admissible evidence.[9] Further, the plaintiff's well-pleaded factual allegations, affidavits, and other admissible documentary evidence are accepted as true and construed in the plaintiff's favor, unless contradicted by documentation submitted by the movant.[10] Additionally, "where material facts are not in dispute . . . , the MCR 2.116(C)(7) analysis par-

---

[4] MCL 691.1401 *et seq.*

[5] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984); see MCL 691.1407(1).

[6] *Smith v Kowalski*, 223 Mich App 610, 616; 567 NW2d 463 (1997).

[7] *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999).

[8] *Patterson v Kleiman*, 447 Mich 429, 432-435; 526 NW2d 879 (1994).

[9] *Maiden, supra* at 119.

[10] MCR 2.116(G)(5); *Maiden, supra* at 119; *Smith, supra* at 616.

allels the MCR 2.116(C)(10) analysis and is a question of law for the trial court."[11]

The applicability of governmental immunity is a question of law that this Court reviews de novo.[12] This Court also reviews de novo questions of statutory interpretation.[13]

### B. BASIC LEGAL STANDARDS

The scope of governmental immunity is construed broadly, while exceptions to it are construed narrowly.[14] " 'The primary goal of statutory interpretation is to give effect to the intent of the Legislature,' " the inquiry into which begins with examination of the language of the statute itself.[15] "If the statute is unambiguous it must be enforced as written."[16] But "if an ambiguity exists, the intent of the Legislature must be given effect[.]"[17] "[S]tatutes are to be interpreted as a whole and construed so as to give effect to each provision[, and] specific words in a statute are given their ordinary meaning unless a different interpretation is indicated[.]"[18] "[R]espectful consideration is to be given to the construction of a statute used by those charged

---

[11] *Willett v Waterford Charter Twp*, 271 Mich App 38, 47; 718 NW2d 386 (2006).

[12] *Baker v Waste Mgt of Michigan, Inc*, 208 Mich App 602, 605; 528 NW2d 835 (1995).

[13] See *Office Planning Group, Inc v Baraga-Houghton-Keewenaw Child Dev Bd*, 472 Mich 479, 488; 697 NW2d 871 (2005).

[14] *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001).

[15] *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 519; 676 NW2d 207 (2004), quoting *In re MCI Telecom Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999).

[16] *Title Office, supra* at 519.

[17] *Nicholas v Michigan State Employees Retirement Bd*, 144 Mich App 70, 74; 372 NW2d 685 (1985).

[18] *Id.*; see MCL 8.3a.

with its application."[19]

"A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system" unless the claimant can show that several statutory requirements have been met under MCL 691.1416 through MCL 691.1419, which "provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory."[20] Thus, to avoid governmental immunity, the claimant must show:

(1) that the claimant suffered property damage or physical injuries caused by a sewage disposal system event;[21]

(2) that the governmental agency against which the claim is made is "an appropriate governmental agency,"[22] which is defined as "a governmental agency that, at the time of a sewage disposal system event, owned or operated, or directly or indirectly discharged into, the portion of the sewage disposal system that allegedly caused damage or physical injury";[23]

(3) that "[t]he sewage disposal system had a defect";[24]

(4) that "[t]he governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect";[25]

(5) that "[t]he governmental agency, having the legal authority to do so, failed to take reasonable steps in a

---

[19] *Nicholas, supra* at 74.

[20] MCL 691.1417(2); *Willett, supra* at 49-50.

[21] MCL 691.1417(2) and (3).

[22] MCL 691.1417(3)(a).

[23] MCL 691.1416(b).

[24] MCL 691.1417(3)(b); see *Willett, supra* at 50-52 (holding that an obstruction by a foreign object in a sewer line constitutes a defect).

[25] MCL 691.1417(3)(c).

reasonable amount of time to repair, correct, or remedy the defect";[26]

(6) that "[t]he defect was a substantial proximate cause of the event and the property damage or physical injury";[27]

(7) "reasonable proof of ownership and the value of [any] damaged personal property";[28] and

(8) that the claimant provided notice as set forth in MCL 691.1419.[29]

### C. RELEVANT STATUTORY PROVISIONS REQUIRING INTERPRETATION

#### (1) SEWAGE DISPOSAL SYSTEM EVENT EXCEPTION TO GOVERNMENTAL IMMUNITY

MCL 691.1417(2) provides an exception to governmental immunity for sewage disposal system events as follows:

> A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a *sewage disposal system event* and the governmental agency is an appropriate governmental agency. Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory. [Emphasis added.]

#### (2) MCL 691.1416(k): "SEWAGE DISPOSAL SYSTEM EVENT"

MCL 691.1416(k) defines the term "sewage disposal system event" as follows:

---

[26] MCL 691.1417(3)(d).

[27] MCL 691.1417(3)(e).

[28] MCL 691.1417(4)(a).

[29] MCL 691.1417(4)(b); see MCL 691.1419(2) and (3).

"Sewage disposal system event" or "event" means the overflow or backup of a *sewage disposal system* onto real property. An overflow or backup is not a sewage disposal system event if any of the following was a substantial proximate cause of the overflow or backup:

(*i*) An obstruction in a service lead that was not caused by a governmental agency.

(*ii*) A connection to the sewage disposal system on the affected property, including, but not limited to, a sump system, building drain, surface drain, gutter, or downspout.

(*iii*) An act of war, whether the war is declared or undeclared, or an act of terrorism. [Emphasis added.]

(3) MCL 691.1416(j): "SEWAGE DISPOSAL SYSTEM"

MCL 691.1416(j) defines the term "sewage disposal system" as follows:

"Sewage disposal system" means all interceptor sewers, storm sewers, sanitary sewers, combined sanitary and storm sewers, sewage treatment plants, and all other plants, works, instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes, and includes a *storm water drain system* under the jurisdiction and control of a governmental agency. [Emphasis added.]

Importantly, there is no definition in the statute of a "storm water drain system."

D. INTERPRETING THE PROVISIONS

(1) INSTRUMENTALITIES DEALING WITH SEWAGE

The Road Commission argues that the roadside drainage ditch is not part of a sewage disposal system because it is neither used nor designed for sewage. The Road Commission also argues that, even though the Legislature provided that a " '[s]ewage disposal sys-

tem' . . . includes a storm water drain system,"[30] the sewage disposal system event exception applies only to storm drains that also service sewage, such as a combined sanitary and storm sewer. We find these arguments without merit.

The phrase "sewage disposal system" does evoke an interpretation that relates to the disposal of sewage, or waste matter,[31] as that term is commonly understood. However, it is significant that the Legislature made a point to clearly differentiate between "storm sewers, sanitary sewers, [and] combined sanitary and storm sewers[.][32] If the Legislature had intended that the exception apply solely to sewers that only service the discharge of sewage, then it would not have made a point of individually listing these different classes of sewers. Similarly, if the Legislature had intended that the exception only apply to sewage, then it would also not have made a point of specifically clarifying that the exception applies to "a *storm water* drain system." To agree with the Road Commission's interpretation would impermissibly render the noted language nugatory.[33]

Further, in *Jackson Co Drain Comm'r v Village of Stockbridge*, this Court held that the sewage disposal system event exception applies to county drains that carry drainage water.[34] Indeed, although the Road Commission argues here that "the run off of surface waters caused by heavy spring rains" was not the result of a

---

[30] MCL 691.1416(j).

[31] See *Random House Webster's College Dictionary* (1997), p 1185.

[32] MCL 691.1416(j).

[33] *Pohutski v City of Allen Park*, 465 Mich 675, 684; 641 NW2d 219 (2002); *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999).

[34] *Jackson Co Drain Comm'r v Village of Stockbridge*, 270 Mich App 273, 285-287; 717 NW2d 391 (2006).

sewage disposal system event, the flooding of the Lintons' property was significantly similar to the heavy rain flooding experienced by the plaintiffs in *Jackson*.[35] Thus, we conclude that the sewage disposal system event exception clearly applies to more than just "sewage" disposal systems, as that term would ordinarily be understood. Pursuant to the statutory language, the exception applies to systems designed for storm water drainage.

### (2) "STORM WATER DRAIN SYSTEM"

Having concluded that the sewage disposal system event exception applies to more than just "sewage" disposal systems, we next consider, as the Road Commission aptly puts it, "whether the overflow of a simple county roadside ditch, . . . which allowed surface water from heavy spring rains to flood [the Lintons'] property, falls within this exception." More specifically, we consider whether the roadside drainage ditch and culvert are "a storm water drain system," as that term is used in the statutory definition of "sewage disposal system."

Unfortunately, as mentioned, none of the relevant statutory provisions defines the term "storm water drain system." Indeed, that phrase is not mentioned anywhere else in any Michigan statute. Thus, in an effort to discern the meaning of this phrase, we find it appropriate to consider separately the meaning of its remaining components, i.e., the term "drain" and the term "system."

### a. "DRAIN"

Courts may consult a dictionary to determine the meaning of a term that is not defined within a statute.[36]

---

[35] *Id*. at 275-276.

[36] *Shelby Charter Twp v Papesh*, 267 Mich App 92, 100; 704 NW2d 92 (2005).

*Random House Webster's College Dictionary* (1997) defines the term "drain" as "a pipe, conduit, etc., by which a liquid drains." But this definition is of only marginal assistance in resolving this issue.

Thus, we look to the Drain Code[37] to provide additional interpretation assistance. Although the terms of one statute are not dispositive in determining the meaning of another, especially if the statutes were not designed to effectuate a common result,[38] the terms of one statute may be taken as a factor in determining the interpretation of another statute.[39] The sewage disposal system event exception expressly includes overflows or backups of "storm water *drain* systems." Thus, it is relevant that, under the Drain Code,

> [t]he word "drain" ... shall include the main stream or trunk and all tributaries or branches of any creek or river, *any watercourse or ditch*, either open or closed, any covered drain, any sanitary or any combined sanitary and storm

---

[37] MCL 280.1 *et seq.*

[38] The purpose of the Drain Code is

> to codify the laws relating to the laying out of drainage districts, the consolidation of drainage districts, *the construction and maintenance of drains*, *sewers*, pumping equipment, bridges, *culverts*, fords, and the structures and mechanical devices to properly purify the flow of drains; to provide for flood control projects; to provide for water management, water management districts, and subdistricts, and for flood control and drainage projects within drainage districts .... [Title of the Drain Code, 1956 PA 40 (emphasis added).]

The purpose of the sewage disposal system event exception is "[t]o afford property owners, individuals, and governmental agencies greater efficiency, certainty, and consistency in the provision of relief for damages or physical injuries caused by a sewage disposal system event ...." MCL 691.1417(1).

[39] *Louis A Demute, Inc v Michigan Employment Security Comm*, 339 Mich 713, 721-722; 64 NW2d 545 (1954).

sewer *or storm sewer* or conduit composed of tile, brick, concrete, or other material, any structures or mechanical devices, that will properly purify the flow of such drains, any pumping equipment necessary to assist or relieve the flow of such drains and any levee, dike, barrier, or a combination of any or all of same constructed, or proposed to be constructed, for the purpose of drainage or for the purification of the flow of such drains, but shall not include any dam and flowage rights used in connection therewith which is used for the generation of power by a public utility subject to regulation by the public service commission.[40]

As the emphasized language indicates, the term "drain" under the Drain Code specifically includes a "ditch." The term "ditch" is not further defined in the Drain Code, but *Random House Webster's College Dictionary* (1997) defines "ditch" as "1. a long, narrow excavation in the ground, as for drainage or irrigation; trench." Further, in § 323, the Drain Code refers to "a ditch or drain . . . constructed . . . primarily for drainage of private lands . . . along a public highway . . . ."[41] These definitions provide strong support for a conclusion that the roadside drainage ditch here is a storm water drain for purposes of the sewage disposal system event exception.

### b. "SYSTEM"

*Jackson* is again relevant for providing some instruction on whether the roadside drainage ditch here qualifies as "a storm water drain *system*." *Jackson* arose "when the village of Stockbridge contracted with the Ingham County Drain Commissioner to discharge its excess wastewater into the Jacobs Lake Drain, which flows through the Wild River and Portage River drains

---

[40]  MCL 280.3 (emphasis added).
[41]  MCL 280.323.

and ultimately the Grand River Drain."[42] Addressing the applicability of the sewage disposal system event exception to save the plaintiffs' claim from being barred by governmental immunity, the *Jackson* panel concluded that "[t]he plain language of the statute includes the drains at issue here in the definition of 'sewage disposal system.' "[43] The *Jackson* panel reached this decision because the Jacobs Lake Drain was clearly part of a system of several connected drains.

*Random House Webster's College Dictionary* (1997) defines the term "system" as "1. an assemblage or combination of things or parts forming a complex or unitary whole." Applying this definition here, the question that must be answered is whether the roadside drainage ditch at issue is, like the Jacobs Lake Drain, part of a system of connected drains, i.e., an assemblage or combination of drains that forms a complex or unitary whole.

The Lintons argue that the roadside drainage ditch was part of a storm water drain *system*, noting that the debris floated downstream and dammed a culvert. Further, during oral argument on the motion for summary disposition, Dave Linton interjected that the ditch did connect to a river, but the trial court appropriately dismissed the statement because it was improper testimony during the summary disposition hearing. Given the absence of any admissible evidence or testimony on the matter, it is unclear from the record whether the roadside drainage ditch here was part of a larger drainage system. Thus, there remains a question of fact regarding whether the roadside drainage ditch is part of a "system." Accordingly, we conclude that this case

---

[42] *Jackson, supra* at 275.
[43] *Id.* at 286.

should be remanded for discovery on the issue whether the roadside drainage ditch was part of a system of drains.

### (3) "EVENT"

We note that if the trial court concludes on remand that the roadside drainage ditch was a sewage disposal system, then it follows that the overflow and flooding that occurred here was a sewage disposal system "event": "the overflow or backup of a sewage disposal system onto real property."[44]

### III. CONCLUSION

We conclude that the term "sewage disposal system," as used in the sewage disposal system exception, refers to more than instrumentalities dealing with actual sewage. Pursuant to the statutory language, the exception also applies to systems designed for storm water drainage. We also conclude that, as a ditch serving as a conduit for the drainage of storm water, the roadside drainage ditch here was a "storm water *drain*." But the issue whether the roadside drainage ditch here is part of a "storm water drain *system*" requires further inquiry and consideration on remand.

In light of our resolution of this matter, we need not reach the Lintons' constitutional arguments.

Reversed and remanded for further discovery and proceedings consistent with this opinion. We do not retain jurisdiction.

---

[44] MCL 691.1416(k); see *Jackson, supra* at 286-287 (concluding that the plaintiffs' claims related to storm water overflow from the subject drains was an "event").