# STATE OF MICHIGAN

# COURT OF APPEALS

DALE KERBYSON, FREDERICK EHMAN,
CAROL EHMAN, MORRIS JOHNSON,
SUZETTE JOHNSON, MICHAEL SHARRARD,
ANNETTE SHARRARD and JODIE
KERBYSON,

UNPUBLISHED
July 9, 2015

Plaintiffs-Appellants,

v

No. 319034
Lapeer Circuit Court
LC No. 11-043992-NZ

ELBA TOWNSHIP,

Defendant-Appellee,

and

TETRA TECH, INC.,

Defendant.

Before: WILDER, P.J., and TALBOT, C.J., and OWENS, J.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendant Elba Township[1] pursuant to MCR 2.116(C)(7) on the basis of governmental immunity. We affirm.

I

This action arises from two sewage backups that occurred on August 8, 2009, and August 9, 2009. Plaintiffs own homes in the Wedgewood subdivision of defendant township. The subdivision is serviced by the township's sanitary sewer system. Defendant contracted with

---

[1] Plaintiffs' claims against defendant Tetra Tech were dismissed by stipulation after plaintiffs and Tetra Tech accepted the case evaluation. Therefore, we will refer to defendant Elba Township as "defendant" in this opinion.

Tetra Tech, Inc., ("Tetra Tech") to operate and service the sewer system. Wastewater from plaintiffs' homes is conveyed through underground pipes to the Wedgewood lift station (also referred to as a pump station or pump/lift station). The lift station is an underground manhole that has a pumping system that forcibly grinds up and lifts sewage to a higher elevation and then pumps the sewage back into sewer pipes for continued transport to a lagoon. The Wedgewood station pumps are powered by electricity. The lift station is equipped with an automatic dialer ("auto-dialer"), which transmits alarm messages to Tetra Tech, including power outage alarms. The auto-dialer relies on a backup battery system to operate during power outages. The auto-dialer is connected to a telephone line owned and operated by AT&T.

Both parties acknowledge that the pumps at the Wedgewood station stopped operating, or operated intermittently, during a six-hour power outage on August 8. Tetra Tech personnel did not receive an alarm notification from the auto-dialer. That morning, Donald Bicknell, a sewer system operator employed by Tetra Tech, visited the Wedgewood pump station after receiving several calls from Elba Township residents regarding power outages. He observed that the pumps were running normally and left the pump station.

In the afternoon on August 8, sewage backed up from the Wedgewood pump station and surcharged into plaintiffs' basements through floor drains, shower drains, and toilets in basement bathrooms. At that time, Bicknell was not aware of any particular issues with the Wedgewood station. However, he decided to stop at that station, as well as two other lift stations, on his way home because he was aware that power outages had occurred nearby based on the phone calls that he had received related to malfunctioning grinder pumps in the area and because he had observed DTE Energy trucks near the Wedgewood station. At the Wedgewood station, Bicknell observed, once again, that the power was on and the pumps were running normally. He realized, however, that the power had been off at some point because "there was high water in the lift station," meaning that there was more water in the lift station than there should have been.

Robert Jones also went to the Wedgewood station after receiving a call that plaintiff Frederick Ehman's basement had flooded. He arrived after Bicknell and observed that the pumps were working properly, the lift station was in a normal condition, and the system was operating as usual.

Early in the morning on August 9, 2009, plaintiffs' homes experienced a second surcharge of sewage into their basements. Defendant attributed this event to torrential rains that fell during a 20-hour period between August 8 and August 9. Howard Selover, a plant operations manager for Tetra Tech, responded to the Wedgewood station after receiving calls from the auto-dialer at the Wedgewood station and Tetra Tech's answering service. Notably, as the phone records confirm, the auto-dialer called out several times in the early morning hours, which included a call to Selover at 1:35 a.m. On his way to the station, Selover noticed that many of the roads in Elba Township were flooded. When Selover arrived at the pump station, the entire area of the station, including the station's cover, was submerged.

Plaintiffs brought this action against defendant and Tetra Tech for damages arising from the sewer surcharges. With respect to defendant, plaintiffs contended that the infiltration of sewage into their homes resulted from defects in the municipal sewage disposal system as contemplated by the sewage disposal system event exception to governmental immunity, MCL

691.1417. In particular, plaintiffs alleged in their first amended complaint that the following "defects" were present in defendant's sewer system, which defendant knew about or should have known about: "a 'combined' sewer system, a failure to provide routine maintenance, inadequate repairs and upgrades, as well as the negligent operation of defective pump stations, . . . including permitting excessive infiltration and inflow during moderate to heavy rain events."[2]

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7) on the basis of governmental immunity. Defendant argued that plaintiffs could not establish that their claims were within the sewage disposal exception to governmental immunity because they could not establish a factual basis for all of the requirements under MCL 691.1417(3). In particular, defendant contended that plaintiffs could not prove that defendant had knowledge of a defect in the sewage disposal system under MCL 691.1417(3)(c), or that it failed to take reasonable steps to remedy the defect under MCL 691.1417(3)(d). With its motion for summary disposition,[3] defendant provided deposition testimony that the Wedgewood station was routinely inspected at least once a week, and usually three times per week, and that the inspections included checking the operability of the pumps, the electrical panel box, and the auto-dialer. Defendant also provided evidence that plaintiffs had not previously reported any problems related to the sewer system, that neither defendant nor Tetra Tech were aware of any defects in the Wedgewood station before the surcharges, and that the pump station had operated without any significant issues between 2000 and August 2009. Moreover, the documentary evidence submitted with defendant's motion indicated that the rainfall between August 8 and August 9 constituted a 100-year rain event,[4] and that the sewer system was not "combined." Defendant also noted that plaintiffs' expert expressly stated during his deposition that he had no opinion on whether the

---

[2] Defendant does not dispute that Tetra Tech's knowledge of a defect in the Wedgewood station would be imputed to defendant.

[3] We note that the evidence submitted with defendant's motion for summary disposition refuted plaintiffs' allegations that defendant failed to provide routine maintenance, provided inadequate repairs or upgrades, and negligently operated the Wedgewood station. Thus, the evidence contradicted plaintiffs' allegations that a construction, design, maintenance, operation, or repair defect existed in the Wedgewood station, which defendant knew about, or should have known about, and which defendant failed to remedy in a reasonable time. Accordingly, the trial court properly considered whether plaintiffs presented evidence of a defect following defendant's motion for summary disposition. See *Willett v Waterford Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006) (When reviewing a motion for summary disposition under MCR 2.116(C)(7), "all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." [Quotation marks and citation omitted.]).

[4] A "100-year" storm or flood is a term that is generally used to indicate "a flood which has a 1% chance of occurring in any given year." *Henry v Dow Chem Co*, 484 Mich 483, 491 n 7; 772 NW2d 301 (2009) (quotation marks and citation omitted).

Wedgewood station had any construction defects and acknowledged that the station had no design defects that were related to the surcharges.[5]

In their response to defendant's motion for summary disposition, plaintiffs argued that summary disposition was not proper under MCR 2.116(C)(7) because an exception to governmental immunity applies to the instant case and because there were, at a minimum, genuine issues of material fact with regard to the requirements under MCL 691.1417(3)(c)-(e). Plaintiffs first asserted that defendant had conceded that (1) governmental immunity does not apply in the instant case, and (2) the sewer system had a defect. Next, plaintiffs appeared to identify two defects in the Wedgewood station. First, plaintiffs asserted that the auto-dialer alarm system was defective either due to inoperative batteries or another malfunction that occurred during rain events, whether related to the auto-dialer itself or the phone line to which the auto-dialer was attached. They argued that defendant was aware of the auto-dialer's defective nature and failed to take reasonable steps to rectify the defect in a reasonable time. In support of this claim, plaintiffs provided documentary evidence regarding two instances during which Tetra Tech employees noticed static and another abnormality associated with the auto-dialer alarm system, including at least one instance while it was raining;[6] evidence indicating that the auto-dialer failed to call out while the power was down on August 8; and evidence showing that AT&T repaired the Wedgewood station's phone line several weeks after the August 8 and August 9 incidents, at which time the phone line did not have a dial tone. Second, plaintiffs appeared to assert that a maintenance or operational defect existed when Bicknell failed to retrieve a backup generator for the Wedgewood station on August 8 despite his awareness of the power outage.

Defendant filed a response to plaintiffs' brief in opposition to defendant's motion for summary disposition, which reiterated the arguments raised in its motion for summary disposition. In addition, defendants argued that it was impossible for defendant or Tetra Tech to anticipate the August 8 surcharge, which was caused by a combination of a 6 ½-hour power outage and an operational failure of the AT&T phone line that was connected to the auto-dialer, and the August 9 surcharge, which was caused by a 100-year storm event that resulted in flooding of the Wedgewood station.

The trial court granted summary disposition in favor of defendant under MCR 2.116(C)(7), on the ground that plaintiffs failed to establish a question of fact with regard to the existence of a defect in the sewer system, as required by MCL 691.1417(3). The basis of the trial court's conclusion was that defendant submitted evidence indicating that the Wedgewood

---

[5] Plaintiffs' expert, John Shaw, identified as a design defect the placement of the "wet well manway" hatch directly in front of the motor control center. However, plaintiffs do not argue that this "defect" was related to the surcharges at issue in this case. Later in his deposition, Shaw also commented on the depressed elevation of the lift station and the fact that the top of the station was not watertight.

[6] The records provided to show that it was raining during one of the instances of static actually show that it was raining on the day *after* someone reported static on the phone.

station performed as designed between 2000 and August 2009, that plaintiffs' expert identified no evidence that the pumps within the Wedgewood station were defective, and that plaintiffs' expert acknowledged that the sewage disposal system events on August 8 and August 9 were caused by a local power outage and an accumulation of water in the Wedgewood station's wet well. Additionally, the court rejected plaintiffs' arguments that defendant is not entitled to governmental immunity on the basis that defendant admitted that the Wedgewood station had a defect, and that defendant's admissions—i.e., that (1) the August 8 and August 9 events were sewage disposal system events, and (2) defendant is an appropriate governmental agency— fulfilled the requirements of MCL 691.1417(2). Accordingly, the trial court entered an order dismissing plaintiffs' claims against defendant.

Plaintiffs moved for reconsideration, arguing that (1) they were not obliged to establish the existence of a defect because defendant failed to contest the factual allegations in plaintiffs' first amended complaint regarding the existence of a defect, and (2) the record included significant evidence of a defect, such that summary disposition on that basis was inappropriate. The trial court denied plaintiffs' motion for reconsideration, stating:

> [T]his [c]ourt granted [d]efendant's motion for summary disposition because [p]laintiffs failed to establish that pursuant to MCL 691.1417(3) (c) (d) [sic], [d]efendant, Elba Township,
>
> (c) ….knew, or in the exercise of reasonable diligence should have known, about the defect.
>
> (d) ….having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.
>
> (e) The defect was a substantial proximate cause of the event and the property damage or physical injury.[7]

---

[7] Plaintiffs argue on appeal that, contrary to the trial court's statement in its order denying reconsideration, the trial court granted summary disposition solely based on its finding that plaintiffs failed to establish the existence of a defect under MCL 691.1417(3)(b), and, as a result, did not consider any of the other elements under MCL 691.1417(3). Plaintiffs also emphasize that defendants did not contest the existence of a defect and, in their opinion, conceded that a defect existed in the lift station.

We acknowledge the inconsistency between the trial court's statements on the record at the motion hearing and the trial court's explanation of the reasons why it granted summary disposition in its order denying reconsideration. Likewise, we recognize that the sole basis of defendant's motion for summary disposition was that plaintiffs could not prove that defendant had knowledge of a defect in the sewage disposal system under MCL 691.1417(3)(c), or that it failed to undertake appropriate measures to correct the defect under MCL 691.1417(3)(d). In any event, we affirm the trial court's ruling because we agree, for the reasons stated in this opinion, that plaintiffs failed to establish the existence of a defect in the Wedgewood station,

Additionally, the trial court found that plaintiffs' motion for reconsideration raised the same arguments as those raised in response to defendant's motion for summary disposition, on which the trial court previously ruled, and that plaintiffs failed to demonstrate a palpable error by which the court and the parties were misled. This appeal ensued.

II

Decisions on summary disposition are reviewed de novo. *Willett v Waterford Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). When reviewing a motion for summary disposition under MCR 2.116(C)(7), "all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Id.* (quotation marks and citation omitted). "If no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law," which is also reviewed de novo. *Id.* (quotation marks and citation omitted; alteration in original).

III

The Governmental Tort Liability Act ("GTLA"), MCL 691.1401 *et seq.*, provides that government agencies are generally immunity from tort liability if they are performing a governmental function, subject to six specified exceptions. MCL 691.1407(1); *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84; 746 NW2d 847 (2008). "The scope of governmental immunity is construed broadly, while exceptions to it are construed narrowly." *Linton v Arenac Co Rd Comm*, 273 Mich App 107, 112; 729 NW2d 883 (2006). Section 17 of the GTLA, MCL 691.1417, provides an exception to governmental immunity for sewage disposal system events. MCL 691.1417 states, in pertinent part:

> (1) To afford property owners, individuals, and governmental agencies greater efficiency, certainty, and consistency in the provision of relief for damages or physical injuries caused by a sewage disposal system event, a claimant and a governmental agency subject to a claim shall comply with this section and the procedures in sections 18 and 19.
>
> (2) A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate

which defendant knew about, or should have known about, and failed to rectify. See *Helton v Beaman*, 304 Mich App 97, 100; 850 NW2d 515 (2014), aff'd 497 Mich 865 (2014) ("This Court ordinarily affirms a trial court's decision if it reached the right result, even for the wrong reasons." [Quotation marks omitted.]). Moreover, the trial court's finding at the motion hearing that plaintiffs presented insufficient evidence to establish the existence of a defect in the sewage disposal system necessarily indicates that the trial court also concluded that plaintiffs failed to establish that defendant was aware of the defect and failed to reasonably address the defect, as a defendant cannot be aware of, or address, a defect that does not exist.

governmental agency. Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory.

(3) If a claimant, including a claimant seeking noneconomic damages, believes that an event caused property damage or physical injury, the claimant may seek compensation for the property damage or physical injury from a governmental agency if the claimant shows that all of the following existed at the time of the event:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury.

IV

Plaintiffs first argue that they were only required to satisfy the two elements of MCL 691.1417(2) in order to avoid defendant's governmental immunity. We disagree.

In *Willett*, this Court observed that "MCL 691.1417(1) broadly requires that 'a claimant . . . shall comply with this section,' and MCL 691.1417(3) imposes *several* requirements for a claimant to avoid governmental immunity for a sewage disposal system event." *Willett*, 271 Mich App at 49. This Court made it clear that a plaintiff must establish the "*five* elements [under MCL 691.1417(3)] in order to avoid governmental immunity." *Id.* at 50 (emphasis in original). Therefore, defendant's concessions under MCL 691.1417(2) that it is an appropriate governmental agency and that a sewage disposal system event occurred do not deprive defendant of the governmental immunity to which it would otherwise be entitled.

V

Plaintiffs next argue that even if the elements of MCL 691.1417(3) must be considered, summary disposition was improper because issues of fact existed with regard to those elements. We disagree.

As a preliminary matter, we note that the motion hearing transcript indicates that in concluding that plaintiffs failed to establish the existence of a defect under MCL 691.1417(3)(b), the trial court found in part that plaintiffs failed to rebut the evidence presented by defendant that

the Wedgewood station performed as designed until August 2009. Likewise, defendant's motion for summary disposition focused on the lack of problems or complaints related to the Wedgewood station prior to August 8, 2009, and August 9, 2009, and the frequent inspections of the lift station. However, under *Willett*, a new or temporary condition can constitute a maintenance defect under MCL 691.1417(3)(b). See *Willett*, 271 Mich App at 40-43, 51-52. In addressing this particular question, this Court observed:

> The statute defines "defect" as "a construction, design, maintenance, operation, or repair defect." MCL 691.1416(e). The statute does not further define the terms used to define "defect." Given that the definition of "defect" itself uses the term "defect," and that the second use of the term is undefined in the statute, we reference dictionary definitions. *Laurence G Wolf, supra* at 271; *Pierce, supra* at 178. A "defect" is defined as "a fault or shortcoming; imperfection." *Random House Webster's College Dictionary* (1997). "Maintenance" is defined as "the act of maintaining," and "maintain" is defined as: "1. to keep in existence or continuance; preserve. 2. to keep in due condition, operation, or force. 3. to keep in a specified state, position, etc." *Id.* [*Willett*, 271 Mich App at 51.]

Accordingly, if the condition is a fault, shortcoming, or imperfection in the construction, design, maintenance, operation, or repair of the sewer system, it may qualify as a defect, notwithstanding that it did not manifest itself previously. MCL 691.1416(e); see *Willett*, 271 Mich App at 51-52. Therefore, the absence of complaints or problems before the August 8 and August 9 surcharges is not dispositive regarding the existence of a defect.

Nevertheless, we agree with the trial court that plaintiffs failed to establish that there was a question of fact regarding whether a defect existed in the sewer system, which defendant knew about, or should have known about, and which defendant failed to reasonably rectify in a reasonable time. Plaintiffs identified two purported defects in the sewage disposal system: (1) an allegedly flawed condition of the auto-dialer at the Wedgewood station, and (2) Bicknell's failure to retrieve and attach a portable generator to the Wedgewood station despite his knowledge of the power outage.[8] We will address each defect in turn.

_____

[8] Plaintiffs also appear to identify a third defect arising from the inability of the Wedgewood station pumps to handle the entry of excessive water into the station on August 9. However, plaintiffs abandoned this argument during their oral argument in this Court, expressly stating that the two defects in the Wedgewood station were those described above. Further, although plaintiffs' expert opined during his deposition that the station's cover should have been watertight given the station's elevation, he expressly stated that he had no opinion regarding whether there were any construction defects in the Wedgewood station and only identified one design defect: the fact "that the wet well manway was directly in front of the motor control center." Finally, plaintiffs appear to reject Selover's explanation that holes in the top of the lift station allowed for the entry of water in their brief on appeal. Therefore, we decline to conclude

Plaintiffs advance two reasons in support of their assertion that the auto-dialer was a defective component in the sewage disposal system, which defendant knew about, or should have known about, and failed to reasonably rectify: (1) the auto-dialer previously placed static-filled calls, including one while it was raining, before August 8, indicating that there was a problem with the auto-dialer or the phone line to which it was attached, and (2) there is no maintenance record documenting the replacement of the auto-dialer's backup batteries, which establishes an inference that the batteries were dead on August 8. We reject both reasons as unsupported by the record.

First, plaintiffs have not established that the auto-dialer's failure to call out on August 8 was caused by the same defect that previously produced static-filled calls. There is no evidence in the record that the cause of the auto-dialer's failure to send an alert call was also the cause of the static-filled calls generated by the auto-dialer. Thus, we cannot conclude from the existing record that defendant's knowledge that the auto-dialer generated static-filled calls would serve as reasonable notice that the auto-dialer would completely fail to send out an alert in the future. More significantly, plaintiffs have failed to establish that the static-filled calls were due to a defect in the auto-dialer rather than the AT&T phone line to which the auto-dialer was connected. Deposition testimony by defendant's expert witness and one of defendant's former operations specialists, cited by plaintiffs in their brief on appeal, indicated that the proper response to a static-filled phone call would have been to call the telephone company, in this case, AT&T, not checking the auto-dialer. Likewise, Jones testified at his deposition that he was the one who previously made the handwritten note that static was present on the auto-dialer phone line on April 28, 2009, that he believed that he contacted the phone company for repairs after noticing the static, and that the phone line was, in fact, repaired after that incident. Finally, the phone records and deposition testimony attached to plaintiffs' response to defendant's motion for summary disposition indicate that the auto-dialer called Selover at approximately 1:30 a.m. on August 9 and made additional calls before placing a static-filled call to the Tetra Tech answering service at 2:40 a.m. Accordingly, plaintiffs have failed to demonstrate an issue of fact with regard to whether, based on the previous static-filled calls, defendant knew or should have known there was a defect in the auto-dialer, which would prevent the auto-dialer from calling out on August 8.

Plaintiffs also have not established that the auto-dialer batteries failed at any time, such that the auto-dialer failed to operate as designed. Bicknell testified at his deposition that he inspected the Wedgewood station approximately three times per week and that these inspections included checking the auto-dialer. In addition, the auto-dialer called out on both August 8 and August 9, and plaintiffs offer no evidence as to why the auto-dialer made calls on those dates if the batteries were either weak or dead at those times. In fact, plaintiffs' contention, that the absence of maintenance records showing that replacement batteries were installed in the auto-dialer proves that the batteries were never replaced, is derived from admitted speculation by their expert as to a possible cause of a hypothetical auto-dialer failure. Thus, given the absence of any

that the Wedgewood station's inability to handle a 100-year rain event established the existence of a defect. *Willett*, 271 Mich App at 51.

evidence in the record indicating that the batteries were actually dead during either of the sewage disposal system events on August 8 and August 9, plaintiffs have failed to establish an issue of fact with regard to the auto-dialer on that basis.

B

Second, plaintiffs have failed to establish that an issue of fact existed with regard to whether defendant was aware of, or should have been aware of, an operational defect in the pump station due to the power outage and failed to reasonably address that defect in a reasonable time by bringing the portable generator to the station. MCL 691.1417(c)-(d). Even if the power outage at the Wedgewood station constituted an operational defect in the sewer system, MCL 691.1417(1)(b); MCL 691.1416(e), given the evidence that the Wedgewood station was operating normally when Bicknell checked the station in the morning after receiving phone calls regarding power outages in the area, and the lack of evidence indicating that Bicknell or any other Tetra Tech employee was aware that anything was amiss at the station prior to the surcharge, plaintiffs have failed to show that defendant did not exercise reasonable diligence in attempting to discover whether a portable generator was needed at the station.[9]

Affirmed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Kurtis T. Wilder
/s/ Michael J. Talbot
/s/ Donald S. Owens

---

[9] Plaintiffs argue in their reply brief on appeal that the trial court erred in granting summary disposition because "it failed to hold a full evidentiary hearing for the purpose of obtaining factual development to determine whether the . . . []sewage disposal event[] exception to governmental immunity applies." Because this issue was raised for the first time in plaintiffs' reply brief, we decline to review it. See MCR 7.212(G); *Kinder Morgan Michigan, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007) ("Reply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief."). Nevertheless, even if we were to review the issue, such an evidentiary hearing is not necessary given our conclusion that plaintiffs failed to establish an issue of fact regarding the elements under MCL 691.1417(3). See *Dextrom v Wexford Co,* 287 Mich App 406, 432-433; 789 NW2d 211 (2010).